UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA                  :
                                          :       13 Cr. 43 (HB)
             - against -                  :
                                          :       OPINION & ORDER
WILLIAM COSME,                            :
                                          :
                          Defendant.      :
----------------------------------------------------------------x

Hon. HAROLD BAER, JR., District Judge:

 Before the Court are Defendant William Cosme's ("Defendant") motion to vacate or modify pretrial restraints on Defendant's property,[1] and pretrial motions for a bill of particulars, discovery, suppression of evidence, dismissal of Counts 1 and 2 of the Indictment and to make further motions. The Court denied these motions from the bench on March 27, 2014 and in a letter dated April 11, 2014, but promised that this written more detailed decision would follow.

## BACKGROUND[2]

 Defendant was arrested by the FBI at his home in Jericho, N.Y. on December 19, 2012 pursuant to an arrest warrant. (Govt. Feb. 3 Opp'n Mem. Ex. B; Kessler Decl. Ex. 1.) On December 18, 2012, Defendant was charged with wire fraud in a criminal complaint alleging, *inter alia,* that Defendant defrauded an international school of approximately $5.5 million. (Complaint, Govt. Feb. 3 Opp'n Mem. Ex. A, ¶ 4.) At the time of his arrest, Defendant's Cadillac Escalade was parked in the driveway of his home, and his Lamborghini and Ferrari were in the garage, adjacent to the foyer where he was arrested. (Govt. Feb. 3 Opp'n Mem. at 2; Def.'s Jan. 25 Mem. at 30.) Defendant claims that during the course of his arrest and in the presence of FBI agents, he asked his girlfriend to call his attorney. Once arrested, Defendant was transported to the FBI's New York City Office at 26 Federal Plaza. (Govt. Feb. 3 Opp'n Mem. Ex. B; Kessler Decl. Ex. 1.) Several agents remained at the house to conduct an inventory search of the three cars. (Govt. Feb. 3 Opp'n Mem. Ex. D; Kessler Decl. Ex. 1.) In the course of those

---

[1] Defendant also moves for reconsideration of the Court's denial of his motions to lift pretrial restraints. Dckt. No. 100. If Defendant wishes to move for reconsideration after this opinion, he may arrange a schedule with his adversary. *See* Dckt. No. 102.

[2] These facts are undisputed unless otherwise noted.

searches, agents found a bag in the Cadillac containing over $630,000 in cash. Kessler Decl. Ex. 1. At the FBI Office, Defendant signed a written waiver of his *Miranda* rights before providing post-arrest statements to the FBI. (Govt. Feb. 3 Opp. Mem., Ex. E; Kessler Decl. Ex. 1.) Defendant alleges that before signing the waiver, he asked, "What about my attorney?" to which an agent responded, "he's not coming, he's lost."

On January 17, 2013, the Defendant was indicted on (1) securities fraud, 15 U.S.C. §§ 78j(b), 78ff; (2) investment advisor fraud, 15 U.S.C. §§ 80b-6, 80b-17; and (3) wire fraud, 18 USC. § 1343. (Indictment, Dckt. No. 4.) The Indictment also included a forfeiture allegation pursuant to 18 U.S.C. 981 §§ (a)(1)(C) and 982(a)(2), and 28 U.S.C. § 2461, with respect to, among other things, $5.5 million dollars, three Scottrade bank accounts (Acct. Nos. 22510394, 22508316, 22512257), a Sterling National Bank Account (Acct. No. 4800018653), the Lamborghini, Ferrari and Cadillac, and the $634,894 cash found in the Cadillac. (Indictment, Dckt. No. 4.)

On February 14, 2013, the Defendant received forfeiture notices from the FBI for the Cadillac, the Lamborghini and the Ferrari, stating that their forfeiture was sought pursuant to 18 U.S.C. § 981(a)(1)(C) and 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983, and 28 C.F.R. 8. (Kessler Decl. Ex. 5.) The notice informed the Defendant that he could file a claim of ownership by March 21, 2013, which he did.

On July 5, 2013 the Government filed a Forfeiture Bill of Particulars, and on July 7, 2013, the Government submitted an *ex parte* application for an order to maintain custody of the property in question until the conclusion of the pending criminal case. (Dckt. Nos. 21; Govt. Feb. 28 Opp'n Mot. Ex. G.) The Court granted the Order on August 6, 2013 ("August 6 Order"). (Dckt. No. 28.)

## DISCUSSION

### A. Motion to Vacate or Modify Pretrial Restraints

#### 1. Concurrent Civil and Criminal Forfeitures

The Defendant's property is subject to criminal forfeiture pursuant to the forfeiture allegation in the Indictment. The criminal forfeiture statute provides that "[u]pon application of the United States, the court may enter a restraining order or injunction . . . or take any other action to preserve the availability of property. . . upon the filing of an indictment . . . for which criminal forfeiture may be ordered  . . . and alleging

that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture. . ." 21 U.S.C.A. § 853(e)(1)(A). The Indictment includes forfeiture allegations for the cars and accounts that Defendant now claims must be returned.

On February 14, 2013, the Government sent notices of administrative forfeiture to Defendant regarding the Cadillac, Lamborghini and Ferrari. Defendant filed a timely claim for these vehicles. To continue the civil forfeiture process, the Government was required to either commence civil forfeiture proceedings, or seek and obtain a criminal indictment and take the necessary steps to maintain custody, within 90 days of Defendant's claim. *See* 18 U.S.C. § 983 (a)(3)(B).  The Government did neither, rather it filed a Forfeiture Bill of Particulars on July 5, 2013, and an *ex parte* application to restrain the property, on July 7, 2013, both after the expiration of the 90-day period.

Before granting the Government's application to restrain Defendant's property, I asked whether "this order was constructed pursuant to 21 U.S.C., Section 853, which is the forfeiture section," and the Government assured me that it was. August 6, 2013 Tr. 5: 19-25. The Defendant argues that in spite of the Government's representation to the contrary, the property was not forfeitable under this section because it was not derived from, nor was it used to facilitate, criminal conduct. *See* 21 U.S.C. §§ 853 (a) & (e)(1)(A). The Defendant is mistaken. All of the property included in the August 6 Restraining Order was also included in the forfeiture allegation spelled out in the Indictment. Thus, the Government has satisfied its requirement, i.e. that this property is derived from the criminal activity at issue in this case. The Defendant argues that a seizure warrant under 21 U.S.C. § 853(f) would have been the preferred method of maintaining custody, but makes no showing that such a warrant is required. Defendant also insists that probable cause was not shown prior to the forfeiture. Here again, he is mistaken. The Government made a sufficient showing of probable cause by virtue of the Indictment, which included the forfeiture allegation. Nothing more is required. *Cf. Kaley v. United States*, 134 S. Ct. 1090, 1098 (2014)("If judicial review of the grand jury's probable cause determination is not warranted (as we have so often held) to put a defendant on trial or place her in custody, then neither is it needed to freeze her property.")

3

**2.   Interaction Between Criminal and Civil Forfeiture**

Defendant also argues that because the Government sent administrative forfeiture notices on February 14, the criminal forfeiture process initiated on January 17 was required to comply with the civil forfeiture timeline. It is undisputed that the Government did not comply with the 90-day timeline required by the civil forfeiture statute. *See* 18 U.S.C. § 983 (a)(3)(A). However, the Defendant's contention that the Government's failure to comply with the civil forfeiture timing vacates the criminal forfeiture is untenable.

Although the question of the relationship between concurrent civil and criminal forfeitures has yet to reach the Second Circuit – or, indeed any circuit – the district courts have permitted criminal forfeiture proceedings to go forward notwithstanding the fact that civil forfeiture proceedings have been abandoned. *See e.g., United States v. One Silicon Valley Bank Account, 3300355711, In the Amount of One Hundred Thirteen Thousand Nine Hundred Fifty-Two & 62/100 Dollars ($ 113,952.62)*, 549 F. Supp. 2d 940, 948 (W.D. Mich. 2008).  The civil forfeiture statute provides that "[i]f criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute." 18 U.S.C. §983(a)(3)(C). While the Government did send administrative notices of forfeiture to the Defendant, it did not take the next step of formally initiating the civil forfeiture process. Thus, only the criminal forfeiture process was commenced, and "the applicable criminal forfeiture statute" governs.

In *United States v. Martin*, 460 F. Supp. 2d 669 (D. Md. 2006), a district court analyzed similar facts and found that if the seized property had been released as a result of the Government's failure to pursue the civil forfeiture, it would produce an absurd result, and said so: "the Government would be worse off having initiated civil forfeiture proceedings than if it had simply done nothing. If it had done nothing . . . and belatedly acquired a criminal seizure warrant, that warrant would remain valid; but because it initiated and then dropped the civil forfeiture proceedings, the CAFRA [Civil Asset Forfeiture Reform Act] time limit would bar criminal forfeiture proceedings as well." *Martin*, 460 F. Supp. 2d at 676. This reasoning is persuasive and without Circuit law, I will permit the Government to continue to hold the seized property, in compliance with

the criminal forfeiture statutes. Clearly, the Government failed to complete the civil forfeiture process and even sent seizure letters to banks freezing the Defendant's assets, and stating that the Government would obtain criminal seizure warrants, but failed to do so. *See* Kessler Dec. Ex. 3. Although I agree with the Defendant that there were missteps by the Government, none appear to mandate the return of Defendant's property. Put another way, Defendant's property remains properly held under the criminal forfeiture statute.

### 3.  Funds Allegedly Unrelated to Criminal Activity

Defendant also argues that he possessed a portion of the seized funds prior to allegations of any criminal activity, and that these funds should be returned to him. Specifically, he argues that $371,000 from Scottrade Account No. 22510394 ("0394 Scottrade Account") and $62,000 from Sterling National Bank Account Acct. No. 4800018653 ("8653 Sterling Account") predated the criminal allegations against him. The Government alleges that the funds in the 0394 Scottrade Account are derived from Defendant's January 21, 2011 deposit of approximately $5,500,000 into a J.P. Morgan Chase Bank Account No. 901936625 ("6625 JPMC Account"). Compl. ¶¶ 13(a), 14(c). Defendant then transferred approximately $5,140,000 from the 6625 JPMC Account into J.P. Morgan Chase Bank Account No. 875936619 ("6619 JPMC Account"). Compl. ¶ 13(b). The prior balance of the 6619 JPMC Account was $371,600 before that deposit. *Id.* The Defendant then transferred approximately $2,002,000 from the 6619 JPMC Account to the 0394 Scottrade Account. Compl. ¶14(c). The 8653 Sterling Account had a prior balance of approximately $8,000 before a transfer of approximately $400,000 from the 0394 Scottrade Account on April 13, 2012. Compl. ¶ 17(b).

Both the 0394 Scottrade Account and the 8653 Sterling account were included in the forfeiture allegation of the Indictment, pursuant to 18 U.S.C. §§ 981(a)(1)(c) & 982(a)(2), and 28 U.S.C. § 2461(c). The Defendant's motion raises the question of whether funds that predated the criminal allegations could be considered "derived from" criminal activity, as required by 21 U.S.C. § 853(a)(1), and whether "the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section," such that the property would be subject to the restraining

order here pursuant to § 853(e)(1)(a). The complication here is that the funds were commingled with funds allegedly derived from the criminal activity.

Happily the Circuit has in this regard provided helpful language and we read: "When some funds in a seized bank account are traceable to criminal activity and some are not, we consult *Banco Cafetero* . . . [The]'accounting choice[]' . . . [o]f relevance here is the 'drugs-in, first-out' approach, which 'consider[s] "traceable proceeds" to be any one withdrawal, or any asset purchased with such withdrawal, to the extent of' the amount of the deposited tainted funds." *United States v. Walsh*, 712 F.3d 119, 124 (2d Cir. 2013)(citing *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir. 1986).

Under that theory, the funds seized from the 0394 Scottrade Account and the 8653 Sterling Account are subject to forfeiture. Indeed, the Defendant makes no attempt to distinguish this precedent from the funds he seeks to have returned. Rather he seems to argue for the "'averaging' rule" which has not been adopted in this circuit. *See id.* at 1159, n. 6. All of the funds Defendant claims predated criminal activity were subsequently commingled with funds allegedly derived from criminal activity and transferred to other accounts at lower values than the criminally derived proceeds. Thus, these funds are considered traceable to the alleged criminal activity and are validly held by the Government.

### 4. Forfeiture Counsel

The Court "may authorize" counsel to represent an indigent Defendant in civil forfeiture actions. *See* 18 U.S.C. § 983(b). In determining whether to authorize counsel, a Court may consider "(i) the person's standing to contest the forfeiture; and (ii) whether the claim appears to be made in good faith." *Id.* However, the Court is not required to appoint forfeiture counsel, nor is such counsel constitutionally mandated. *See id.* Further, the Defendant has now retained able forfeiture counsel, rectifying any deficiency that may have existed.

### 5. Waiver of *Monsanto* Hearing

The Defendant waived his right to a *Monsanto* hearing, both in writing and orally. *See* Stipulation and Order, Dckt. No. 34. In a colloquy with the Court, Defendant acknowledged that he would not have the opportunity to "come back and ask for more money." Tr. Sep. 18, 2013 Court Conference at 6: 6-24. The Defendant now argues that

6

the Stipulation was a "contract of adhesion" because he was not aware that other options were available. However, the Court made clear to him that a *Monsanto* hearing was available, and that he was waiving his right to such a hearing. *Id.* Further, the Defendant has not come close to making an adequate showing of indigence under *United States v. Bonventure*, 720 F.3d 126 (2d Cir. 2013).

## B.  Defendant's Pretrial Motions

### a.  Bill of Particulars

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *see also United States v. Boykin*, 2011 WL 2419877 *2 (S.D.N.Y. June 7, 2011). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky,* 820 F.2d at 574 (citation omitted).  Here, the Government has provided a detailed Complaint in addition to the Indictment; the Defendant is not entitled to more.

### b.  Rule 16 Discovery Material

The Government has made two discovery productions so far, and states that experts and exhibits will be disclosed sufficiently in advance of trial. The Defendant requests a list of all people that the Government has interviewed in connection with this case and hearsay statements of people the Government intends to call as witnesses. However, Rule 16 does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500," and Defendant's requests are beyond the scope of that statute. *See* Federal Rules of Criminal Procedure 16(a)(2). To the extent Defendant seeks disclosure of the identities of confidential informants, such disclosure "'. . . is not required unless the defendant has demonstrated that 'the informant's testimony is . . . *material to the defense.'" United States v. Juliano*, 2000 WL 640644 *4 (S.D.N.Y. May 18, 2000)(quoting *United States v. Saa,* 859 F.2d 1067, 1073 (2d Cir.1988)(emphasis in *Juliano*). Here, Defendant has made no such showing. *See Juliano*, 2000 WL 640644 at *4.

### c.  Suppression of Evidence

The Defendant argues that the three cars found at his home and the contents of those cars should be suppressed. In the Indictment and the Complaint, the Government alleges that each of these cars was purchased with funds from accounts where the Defendant held money derived from criminal activity. The Cadillac was in Defendant's driveway when agents arrived at his home, thus it was in "plain view." "The 'plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." *Washington v. Chrisman*, 455 U.S. 1, 5-6 (1982)(citation omitted). Here, the agents obviously had a right to be outside Defendant's home, and the Cadillac is "incriminating evidence." Thus, it was properly seized.

The Lamborghini and Ferrari were located in the Defendant's garage, the door to which was adjacent to the foyer where Defendant was arrested. "When arresting a person in a residence, officers may perform a protective sweep incident to the arrest to protect themselves or others." *United States v. Lauter*, 57 F.3d 212, 216 (2d Cir. 1995). "[O]fficers may 'without probable cause or reasonable suspicion[ ] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.'" *Id.* (quoting *Maryland v. Buie,* 494 U.S. 325, 334 (1990)). Thus, they were also lawfully seized.

Subsequently, the agents conducted inventory searches of each vehicle. "[T]he inventory search constitutes a well-defined exception to the warrant requirement." *United States v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002)(quotation and citation omitted). "Such searches are constitutional under the Fourth Amendment because they 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" *Id.* (quoting *Colorado v. Bertine,* 479 U.S. 367, 372 (1987)). "[L]aw enforcement officials may open closed containers as part of an inventory search so long as they act in good faith pursuant to standardized criteria . . . or established routine." *Id.* (quotation and citation omitted). Here, the Defendant does not dispute that the agents conducted the inventory searches in accordance with FBI policy. Thus, the inventory searches and seizure of the vehicle contents were also permissible.

### d. Post-Arrest Statements

It is well settled that "[i]f the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him." *Davis v. United States*, 512 U.S. 452, 458 (1994). Here, Defendant was informed of his *Miranda* rights both orally and in writing. *See* Govt. Feb. 3 Opp. Mem. Exs. B & E; Kessler Decl. Ex. A. He does not dispute that he waived them in writing.[3] *Id.* Defendant contends that he instructed his girlfriend to call his attorney, and asked, "What about my attorney?" before signing the *Miranda* waiver, and that having done so he effectively invoked his right to counsel such that his post-arrest statements should be suppressed. Def.'s Jan. 8 Supp. Mem. at 33-38. The Government so far as I understand their position, has told the Court that there were FBI agents on the scene at the time the Defendant is alleged to have made the statements, who deny any such statements were made and if called to the witness stand will so testify. However, even assuming *arguendo* that these statements were made, Defendant fails to demonstrate that his post-arrest statements ought to be suppressed.

"Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. at 459 (citation and quotation omitted). Law enforcement officers are not required to hold off or stop questioning a suspect "[if] the statement fails to meet the requisite level of clarity." *Id.* Here, Defendant's instruction to his girlfriend and his question "What about my lawyer?" were insufficient to invoke his right to counsel.

### e. Dismissal of Counts 1 and 2 of the Indictment

Defendant argues that Counts 1 and 2 of the Indictment should be dismissed. I denied Defendant's prior motion to dismiss the indictment. Dckt. No. 23, Tr. June 13, 2013 Conference 3-11. A defendant cannot challenge the sufficiency of an indictment where it "[meets] the basic pleading requirements and was valid on its face" *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009). "[A]n indictment need do little more

---

[3] Defendant disputes that he orally waived his *Miranda* rights. However, this is irrelevant since he does not dispute that his post-arrest statements were subsequent to signing the written waiver.

than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)(citation and quotation omitted.) The Indictment meets these minimal requirements.

### f.   Early Disclosure of *Giglio* and Jencks Acts Materials

"[T]he Government must make disclosures in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). The Government's obligations under the Jencks Act require only the turnover of prior written statements of its witnesses in advance of cross examination of those witnesses. *See* 18 U.S.C. § 3500. Consistent with the practice in this district, the Government represents that *Giglio* materials, i.e., *Brady* materials of an impeachment nature, will be turned over no later than the Friday before trial. I have, however, ordered the Government to provide Jencks Act materials four working days in advance of trial. Dckt. No. 87.

Federal Rule of Evidence 404(b) requires that the Government provide "reasonable notice" that it plans to introduce evidence of a defendant's prior bad acts or crimes. In this circuit, disclosure has been required up to several days before trial. *See United States v. Valenti*, 60 F.3d 941, 945 (2d Cir. 1995)(notice four days before trial deemed sufficient where Government provided documents to defense the same day that they were received).  Here, the Government has already provided some 404(b) evidence and states that the balance will be provided no later than three weeks before trial. This timing is reasonable and provides sufficient notice for Defendant to contest evidence that the Government puts forward. Thus, Defendant's motions for earlier disclosures of *Giglio*, § 3500 and Rule 404(b) evidence are denied.

### g.  Brady Material

"Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to *Brady* where the Government, as here, has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations under *Brady*." *United States v. Birkett,* 1999 WL 689992 *6 (S.D.N.Y. Sept. 2, 1999). I have no reason to believe that the Government is not

complying with its *Brady* obligations in good faith. Thus, Defendant's motion for *Brady* material is denied.

### h.  Leave to File Further Motions

I have made clear that further motions would not be considered. *See* Dckt. No. 68.

## CONCLUSION

For the foregoing reasons, Defendant's motion to vacate or modify pretrial restraints on Defendant's property and Defendant's pretrial motions are DENIED. The Clerk of Court is instructed to close these motions and remove them from my docket. Trial will begin on June 2, 2014 at 9:30 a.m. in Courtroom 23B. Motions in limine shall be filed by May 12, with responses by May 19. Proposed voir dire and requests to charge shall be filed by May 19.  The Government will provide Jencks materials four working days in advance of trial. Defendant remains pro se and may consult with CJA counsel, who was present and to whom the Defendant was introduced at the last pretrial conference. It is noteworthy that this would be his eighth or ninth attorney. All this was understood by the Defendant and noted on the record during the March 27 conference.

**SO ORDERED.**

Date: 4/21/14

New York, New York

**HAROLD BAER, JR.**
**United States District Judge**

11