```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,
                Plaintiff.          :
                                    :    13-cr-43 (LAP)
            -v.-                    :
                                    :         ORDER
WILLIAM COSME,                      :
 a/k/a "William Cosmo"              :
                                    :
                Defendant.          :
------------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant William Cosme's pro se motion for a sentence modification pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. no. 456.)  Defendant originally filed an "Emergency Motion" for release on January 6, 2021 (dkt. no. 429), which the Government opposed, (dkt. no. 431). Defendant filed another "Emergency Motion" for release on January 19, 2021.  (Dkt. no. 432.)  The Court denied Defendant's first "Emergency Motion," (dkt. no. 429), without prejudice due to lack of jurisdiction because of Defendant's then-pending appeal.  (Dkt. no. 435.)  Defendant renewed his motion on February 18, 2022 (dkt. no. 456), and the Government opposed, (dkt. no. 469).  For the reasons set out below, Defendant's motion is denied.

I.   **Background**

   a. The Offense Conduct

Defendant was charged in Superseding Indictment S1 13 Cr. 43 (LAP) with wire fraud and aggravated identity theft. (See dkt. no. 309.)  The charges related to a scheme to defraud Taejon Christian International School ("TCIS"), a Christian missionary school located in the Republic of Korea, of $5.5 million.  Defendant claimed that his company, Cosmo Dabi International Trading Group, Inc. ("Cosmo Dabi"), would invest $5.5 million provided by TCIS in order ultimately to fund a $55 million loan to TCIS.  After TCIS transferred the $5.5 million to Cosmo Dabi, Defendant used the money to enrich himself instead of investing the money for TCIS.  Defendant blew through hundreds of thousands of dollars in Las Vegas, as well as buying himself a series of luxury cars.

Defendant put together a website filled with lies to induce TCIS to hand over its money.  The Cosmo Dabi website contained numerous falsehoods.  Among other things, the Cosmo Dabi website claimed that (i) Cosmo Dabi had $11 billion USD in assets under management; (ii) that Cosmo Dabi had financial operatives and "vast resources" located in Hong Kong, Russia, London, Geneva, Zurich, Greece, Abu Dhabi, Korea, Italy and Monaco; (iii) Cosmo Dabi had significant funding capabilities with "no cap for international projects;" (iv) Cosmo Dabi's "client references

include but are not limited to . . . families of royalty;" and (v) Cosmo Dabi had an established track record, with a "consistent net 25% per annum" return over the past ten consecutive years.  In truth and in fact, as the evidence at trial showed, Defendant was not as he presented himself and his company on the Cosmo Dabi website.  He had no relevant experience as an asset manager, had only founded Cosmo Dabi in or about May 2010, and had less than $500,000 in total in his own and Cosmo Dabi's bank accounts around this time period.

On January 21, 2011, TCIS wired the $5.5 million to an account maintained by Cosmo Dabi at JP Morgan Chase Bank.  After sending the wire transfer, an official with TCIS wrote to Defendant, "William, TCIS seed money is now in your hand and please help the school through the new campus relocation project.  By the way, thanks for loaning us at an incredible low interest rate.  It's really pleasure doing business with you."

TCIS's trust in Defendant was sadly misplaced.  Instead of investing the entirety of the $5.5 million deposit as he had agreed to, Defendant almost immediately began spending TCIS's "seed money" of $5.5 million on lavish personal expenses. Defendant transferred hundreds of thousands of dollars from Cosmo Dabi bank accounts to a house account maintained at the Venetian casino in Las Vegas and proceeded to rack up gaming losses of approximately $216,000 between February and June 2011.

Defendant's ex-girlfriend, Catherine Catolos, testified at trial that during this trip Defendant was "just gambling and eating."

When TCIS began to seek the funds it was promised under its agreement with Cosmo Dabi, Defendant came up with elaborate excuses as to why he could not provide the funds.  Eventually, TCIS began to request the return of its funds.  Defendant refused to return the funds and set up a sham audit of TCIS in order to stall for time and come up with a pretextual reason to claim TCIS was in "default."  Defendant never returned TCIS's money despite repeated demands that he do so.

In total, Defendant spent at least over $1.8 million of TCIS funds on his own personal expenses between January 2011 and his arrest in December 2012, which, as noted above, included the purchase of multiple luxury cars.

In addition to defrauding TCIS out of $5.5 million, Defendant also engaged in aggravated identity theft by using the identity of his own aunt and his former accountant without authorization in order to bolster his bonafides in connection with the fraud.

b. Trial and Sentencing

Defendant proceeded to trial in March 2017.  Defendant initially was pro se at trial, but this Court ultimately revoked Defendant's right to self-representation after he refused to participate meaningfully in the proceedings and follow court

directives during voir dire.  During the defense case, Defendant
testified on his own behalf.  The jury returned a verdict of
guilty as to both counts.

On July 14, 2017, the Court sentenced Defendant to
eighty-seven months imprisonment on Count One and twenty-four
months imprisonment on Count Two, to run consecutively, for a
total of 111 months imprisonment, to be followed by three years
supervised release, and ordered Defendant to pay $5.5 million in
restitution and a $200 mandatory special assessment and to
forfeit certain assets.  At sentencing, the Court applied the
obstruction enhancement due to Defendant's willfully false
testimony at trial.  (Transcript, dated July 15, 2017
("Sentencing Tr.") [dkt. no. 400] at 13.)  When given the
opportunity to speak on his own behalf at sentencing, Defendant
sought to relitigate his innocence and sought to blame the
Government and the victim of his crime, TCIS.  (Id. at 23-25).
In imposing Defendant's sentence, this Court specifically noted
"Mr. Cosme's lack of remorse for the offense conduct." (Id.
at 54).

c. Current Incarceration Status

Defendant is currently serving his sentence at Residential
Reentry Management (RRM) New York.  As of the date of this
order, he has served approximately sixty-two months of his
111-month term of imprisonment (without taking into

consideration credit for good behavior, which would reduce his time served by approximately 15 percent).  According to the Bureau of Prisons ("BOP"), Defendant is currently scheduled to be released on or about January 13, 2025.

**II.  Applicable Law**

Under 18 U.S.C. § 3582(c), as amended by the First Step Act, a district court "may not modify a term of imprisonment once it has been imposed except" as provided by statute.  As relevant here:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Id. § 3582(c)(1)(A).  The policy statement, which appears at Section 1B1.13 of the United States Sentencing Guidelines, provides that a reduction of sentence is permitted if:

"extraordinary and compelling reasons warrant the reduction,"
U.S.S.G. § 1B1.13(1)(A); "the defendant is not a danger to the
safety of any other person or to the community, as provided in
18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is
consistent with this policy statement," id. § 1B1.13(3).  The
Application Notes of § 1B1.13, in turn, describe multiple ways
that a defendant can show an "extraordinary and compelling
reason," but only one is relevant here:

> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal
>> illness (i.e., a serious and advanced illness
>> with an end of life trajectory).  A specific
>> prognosis of life expectancy (i.e., a
>> probability of death within a specific time
>> period) is not required.  Examples include
>> metastatic solid-tumor cancer, amyotrophic
>> lateral sclerosis (ALS), end-stage organ
>> disease, and advanced dementia.
>
>> (ii) The defendant is—
>>> (I)   suffering from a serious physical or
>>>       medical condition,
>>> (II)  suffering from a serious functional
>>>       or cognitive impairment, or
>>> (III) experiencing deteriorating physical
>>>       or mental health because of the
>>>       aging process,
>>
>> that substantially diminishes the
>> ability of the defendant to provide self-
>> care within the environment of a
>> correctional facility and from which he
>> or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1.

7

Regardless of the theory of "extraordinary and compelling reasons" that a defendant proceeds under, the Section 3553(a) factors are relevant to whether compassionate release is warranted.  See 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

As the proponent of the motion, the defendant bears the burden of proving "extraordinary and compelling reasons" exist under the above criteria to justify early release.  See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Clarke, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

## III. **Discussion**

The Government concedes that Defendant has satisfied the statutory exhaustion requirement.  (Dkt. no. 431 at 4).

Defendant in conclusory fashion claims he is entitled to a reduction in sentence because "BOP/Schuylkill are completely dysfunctional" and because he has a "BMI over 30, high blood pressure."  (Dkt. no. 456 at 1.)

However, upon the Court's inquiry, the Government informs that Defendant has received the COVID-19 vaccination and booster.  (Dkt. no. 469 at 3.)  Accordingly, Defendant's BMI and high blood pressure do not constitute extraordinary and

compelling reasons warranting granting of the motion.  See,
e.g., United States v. Jaber, No. S1 13 CR 485 (CM), 2022 WL
35434, at *2 (S.D.N.Y. Jan. 4, 2022) ("As numerous courts in
this District have concluded, the fact that a defendant is fully
vaccinated weighs heavily against granting release." (citing
United States v. Jones, 17 CR 214 (CM), 2021 WL 4120622, at *2
(S.D.N.Y. Sept. 9, 2021) (denying compassionate release motion
of defendant who suffered from underlying health conditions but
was fully vaccinated, explaining that "the risk of COVID-19 for
a vaccinated individual is substantially reduced to the point
that a defendant will typically not be able to demonstrate
extraordinary and compelling reasons after he has been
vaccinated," and "[i]ndeed, recent data confirms that the
COVID-19 vaccines dramatically reduce the risk of death or
serious illness from the various variants of COVID-19, even the
dreaded Delta Variant"))); United States v. Orlandez-Gamboa,
99 Cr. 654 (CM), 2021 WL 2582077, at *3 (S.D.N.Y. June 23, 2021)
(finding defendant had failed to demonstrate extraordinary and
compelling circumstances, even though he was in high-risk age
group, because he was "fully vaccinated against COVID-19");
United States v. Mena, 16 Cr. 850 (ER), 2021 WL 2562442, at *3
(S.D.N.Y. June 23, 2021) ("Access to an approved COVID-19
vaccine generally counsels against compassionate release based
on COVID risk, due to the strong evidence of the effectiveness

of each of the vaccines."); <u>United States v. Santana</u>, 18 Cr. 865 (VEC), 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (finding no extraordinary circumstances due to "the efficacy of the COVID vaccines, and specifically the Pfizer vaccine" and citing data showing Pfizer vaccine is 94% effective against COVID-19 hospitalization).

Even if Defendant had presented extraordinary and compelling reasons warranting release, the Section 3553(a) factors weigh heavily against release.  First, the circumstances of the offense are appalling.  Defendant stole $5.5 million from TCIS, a Christian school in the Republic of Korea, through an elaborate scheme.  Defendant had no intention of investing TCIS's money as he promised he would and told numerous lies to prevent TCIS from uncovering his fraud and obtaining a return of funds.  Defendant also used identities of people close to him, including his aunt, to continue to hide his crime.  During Defendant's appeal to the Court of Appeals, TCIS submitted a letter dated January 18, 2021 to the Court of Appeals detailing the existential threat and continuing damage that Defendant's fraud has visited on the school.  (<u>See</u> Affirmation for the United States at Ex. A, United States v. Cosme, No. 17-1759 (2d Cir. Jan. 19, 2021).)  The seriousness and brazenness of Defendant's crime counsel against release.

Even after committing fraud on a school whose mission is educating children, Defendant has shown no remorse. Indeed, he claimed in his appeal that he was the victim of fraud purported by the Government and grand jury. (See Mot. for Leave/Stay to File Rule 60 Mot., United States v. Cosme, No. 17-1759 (2d Cir. Dec. 17, 2019) (moving to hold this appeal in abeyance due to purported frauds on the court by the Government and grand jurors).) At his sentencing before this Court, Defendant continued to show a stunning lack of remorse and continued to take no responsibility for his brazen and obvious fraud. Instead, he used his opportunity to speak to try to relitigate the case to prove he was innocent and continued to blame the Government and TCIS itself for his own crimes. When speaking on his own behalf, Defendant, among other things, accused the headmaster of TCIS of having committed fraud and perjury (Sentencing Tr. at 23-24), and stated, "the defendant could actually end up facing many years in jail when he doesn't even belong in jail, when his victim belongs in jail." (Id. at 24-25.) In imposing Defendant's sentence, the Court specifically noted "Mr. Cosme's lack of remorse for the offense conduct." (Id. at 54.) The Court also found at sentencing that Defendant compounded his crimes by lying under oath during his testimony and applied the two-point obstruction enhancement. (Id. at 13.) The fact that Defendant has never taken any responsibility for

his brazen and obvious fraud and continues to blame others for his own crimes is a strong factor weighing against the motion. See, e.g., United States v. Lisi, 440 F. Supp. 3d 246, 253 (S.D.N.Y. 2020) ("Lisi continues to accept no responsibility for his crimes . . . . The Court has no confidence that Lisi has yet grappled with the magnitude of his errors, and does not believe that any of the goals of sentencing would be served by granting him a sentence of time served."). Indeed, Defendant continues to blame the victim, most recently seeking attorney's fees from TCIS (see dkt no. 490). Thus, the characteristics of Defendant counsel against release.

**IV.  Conclusion**

For the reasons stated above, Defendant's motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (dkt. no. 456) is denied. The Clerk of the Court shall close the open motion (dkt. no. 456).

The Clerk of the Court shall mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:    New York, New York
          July 15, 2022

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge